UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

JASON RILEY,

    Plaintiff,

v.

BRIAN FISCHER, et al.,

    Defendants.

13-CV-331
DECISION & ORDER



On April 1, 2013, the plaintiff, Jason Riley, commenced this action under 42 U.S.C. § 1983. Docket Item 1. On April 20, 2016, the case was referred to United States Magistrate Judge Leslie G. Foschio for all proceedings under 28 U.S.C. § 636(b)(1)(A), Docket Item 14; and, on January 18, 2018, for all proceedings under 28 U.S.C. § 636(b)(1)(B), Docket Item 29.

On January 16, 2018, the defendants moved for summary judgment, Docket Item 28; on March 21, 2018, Riley responded, Docket Item 35; and on April 11, 2018, the defendants replied, Docket Item 37. On March 11, 2019, Judge Foschio issued a Report and Recommendation ("R&R") finding that the defendants' motion should be granted. Docket Item 40.

On April 16, 2019, Riley objected to the R&R on the grounds that Judge Foschio erred in finding (1) that Riley had not exhausted his administrative remedies in relation to his urological condition; (2) that the defendants were not deliberately indifferent to Riley's medical needs; (3) that Riley failed to establish a causal connection between his grievance and his subsequent Inmate Misbehavior Report; and (4) that Riley was

accorded all the process he was due in connection with his disciplinary hearing. *See* Docket Item 43. On May 7, 2019, the defendants responded to the objections. Docket Item 44. And on July 3, 2019, this Court heard argument from both sides. *See* Docket Item 46.

A district court may accept, reject, or modify the findings or recommendations of a magistrate judge. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3). A district court must conduct a *de novo* review of those portions of a magistrate judge's recommendation to which objection is made. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(3).

This Court has carefully and thoroughly reviewed the R&R, the record in this case, the objection and response, and the materials submitted by the parties. Based on that *de novo* review and for the reasons that follow, the Court accepts and adopts Judge Foschio's recommendation to grant the defendants' motion.

## **DISCUSSION**

The Court assumes the reader's familiarity with the facts alleged in the complaint, *see* Docket Item 1, and Judge Foschio's analysis in the R&R, *see* Docket Item 40.

### A. Eighth Amendment Claims

First, Riley's Eighth Amendment claims arising from his alleged urological condition are dismissed because, as Judge Foschio correctly found, Riley failed to exhaust his administrative remedies. *See id.* at 9-16. And even if Riley had exhausted his administrative remedies with respect to his urological-condition claim, it still would be subject to dismissal because he has failed to provide an expert affidavit supporting his

2

claim that the defendants committed malpractice—let alone that they did so in a manner that gives rise to a section 1983 claim. *See infra* at 3-4.

Second, Riley's Eighth Amendment claims arising from his back pain also are dismissed. As Judge Foschio found, Riley has not raised a material issue of fact as to whether the defendants were deliberately indifferent to his back pain. *See id.* at 16-23.

Riley's assertion that he was denied reasonable care for a month because the nursing staff did no more than "document[ ] their encounters with [Riley]," Docket Item 43 at 5, is belied by the record. Based on the nursing staff notes, a physician or physician's assistant ("PA") provided care—albeit remotely—during the time period in question. Indeed, during the four-week period during which Riley alleges he was denied care, the nursing staff's reports were reviewed by either a physician or a PA nine times. *See* Docket Item 28-10 at 6-9, 11. PA Benjamin Oakes prescribed medication, *id.* at 3, 4, 16, and determined that an in-person evaluation was not otherwise necessary, *see id.* at 2-3. And Dr. Wesley Canfield reviewed Riley's X-rays, "which showed minimal degenerative disk disease," *id.* at 6. In other words, Riley was examined by nurses, and a physician and a PA reviewed those examinations and ordered medication.

The pertinent question, then, is whether PA Oakes's treatment plan constituted "unreasonable medical care." *See Salahuddin v. Goord*, 467 F.3d 263, 280 (2dCir. 2006). But Riley has not produced any evidence from a medical expert contradicting PA Oakes's conclusions that "[Riley's] long-standing condition caused by a motorcycle accident did not present a condition of urgency that could result in degeneration or extreme pain" and that Riley did not "suffer any harm because he needed to wait to meet personally with a physician or PA." Docket Item 28-10 at 4; *see also id.* at 13, 16

3

(PA Oakes declaring that "Ultram"—a specific medication Riley claims he should have been prescribed—"is not indicated for long-term chronic pain" because it "is a narcotic" and "is addictive"; instead, staff "ordered the appropriate pain medications . . . indicated for long-term pain management"). Without such evidence, there would be no basis for a lay jury to conclude that Riley was denied reasonable medical care—let alone that such a denial rose to the level of constitutional injury cognizable under section 1983. Stated another way, and as Judge Foschio found, "[a]lthough [Riley] may not have agreed with the course of treatment [the d]efendants took with regard to [Riley's] low back pain, the record simply fails to establish any issue of fact suggesting that such treatment was inadequate or caused or threatened [Riley] with serious harm required to maintain [an] Eighth Amendment claim." Docket Item 40 at 23.

### B. First Amendment Retaliation Claim

Riley's First Amendment retaliation claim also is dismissed. To establish a claim for retaliation under section 1983, a plaintiff must show that (1) he engaged in constitutionally protected speech or conduct, (2) the defendants took adverse action against him, and (3) there was a causal connection between the protected speech or conduct and the adverse action. *Espinal v. Goord*, 558 F.3d 119, 128 (2d Cir. 2009); *see also Gill v. Mooney*, 824 F.2d 192, 194 (2d Cir. 1987) ("[A] claim for relief may be stated under section 1983 if otherwise routine administrative decisions are made in retaliation for the exercise of constitutionally protected rights." (citing *Purcell v. Coughlin*, 790 F.2d 263, 265 (2d Cir. 1986) (per curiam))). To prove the final prong, the plaintiff "bears the burden of showing . . . that the protected conduct was a substantial or motivating factor in the prison officials' decision to [take the action they did against

4

the] plaintiff." *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996) (citing *Mount Healthy Sch. Dist. v. Doyle*, 429 U.S. 274, 287 (1977)). The plaintiff may rely upon circumstantial evidence to prove causation. *See Colon v. Coughlin*, 58 F.3d 865, 872-73 (2d Cir. 1995). But because of the "ease with which claims of retaliation may be fabricated, [courts] examine prisoners' claims of retaliation with skepticism and particular care." *Id.* at 872.

Even assuming that urinalysis testing constitutes an adverse action, this Court agrees with Judge Foschio that Riley has failed to establish any material issue of fact as to whether the defendants administered that test as retaliation for Riley's filing grievances. Riley has not, for example, raised a fact issue as to whether defendant Capece was aware of Riley's prior grievances. *See* Docket Item 40 at 30-32. Even were it true that, as Riley alleges, Capece warned Riley not to "play that shy bladder shit" when Riley failed to provide a sample, *see* Docket Item 35 at 18, such a statement would not give rise to an inference of retaliation because it allegedly was made *after* Capece had started to administer the test. And, in any event, the statement in no way relates to Riley's protected conduct—that is, his filing grievances, none of which pertained to his alleged urological condition.

Riley's reliance on temporal proximity similarly is unavailing. While "[t]he temporal proximity of events may give rise to an *inference* of retaliation for the purposes of establishing a *prima facie* case of retaliation," if the defendant puts forth a non-retaliatory reason for the action at summary judgment, "without more, such temporal proximity is insufficient to satisfy [the plaintiff's] burden to bring forward some evidence of pretext." *El Sayed v. Hilton Hotels Corp.*, 627 F.3d 931, 933 (2d Cir. 2010) (per

5

curiam) (emphasis added). So even if the four-month gap between Riley's grievance and the urinalysis test were enough to survive a motion to dismiss, the defendants' non-retaliatory reason for that action—namely, that Riley randomly was selected for testing—makes that temporal proximity insufficient, on its own, to survive summary judgment. And as discussed above, Capece's alleged statement does not provide the pretext needed to overcome the non-retaliatory reason given by the defendants.

C. Fourteenth Amendment Due Process Claim

Finally, Riley's Fourteenth Amendment due process claim is dismissed as well. Even assuming that Riley's six months in the Special Housing Unit constituted an "atypical and significant hardship . . . in relation to the ordinary incidents of prison life," *Cruz v. Gomez*, 202 F.3d 593, 597 (2d Cir. 2000) (alteration in original) (quoting *Sandin v. Conner*, 515 U.S. 472, 484 (1995)), Riley has not established any material issue of fact as to whether he received the process he was due: "[i] advance written notice of the charges; [ii] a fair and impartial hearing officer; [iii] a reasonable opportunity to call witnesses and present documentary evidence; and [iv] a written statement of the disposition, including supporting facts and reasons for the action taken," *see Luna v. Pico*, 356 F.3d 481, 487 (2d Cir. 2004) (citation omitted); *see also id.* at 488 ("[T]he requirements of due process are satisfied if *some evidence* supports the decision by the prison disciplinary board . . . ." (alteration in original) (quoting *Superintendent v. Hill*, 472 U.S. 445, 455 (1985))).

Riley does not object to Judge Foschio's finding that the discipline hearing complied with the first and second requirements. *See* Docket Item 43 at 10-11. As to Riley's objection regarding the third requirement, even if he is correct that the hearing

officer erred in reaching a determination without first soliciting testimony from a doctor (rather than a nurse) and without considering certain medical records, *see id.*, any such error was harmless. Riley has not produced an expert to rebut PA Oakes's testimony that Riley, in fact, was able to urinate on the day in question. See Docket Item 28-10 at 13-15. With respect to Riley's objection regarding the fourth requirement, as Judge Foschio explained, "the fact that [Riley's] [medical records], including doctor's notes, were silent as to any indication of [Riley's] urinary difficulties prior to [the urinalysis test]," *see* Docket Item 40 at 36, provides "some evidence" on which the hearing officer could find that Riley disobeyed a direct order, *see Hill*, 472 U.S. at 455. Accordingly, this Court grants the defendants' motion for summary judgment on Riley's due process claim.

## CONCLUSION

For the reasons stated above and in the R&R, the defendants' motion for summary judgment, Docket Item 28, is GRANTED; the complaint, Docket Item 1, is dismissed; and the Clerk of the Court shall close the file.

SO ORDERED.

Dated: February 24, 2020
Buffalo, New York

LAWRENCE J. VILARDO
UNITED STATES DISTRICT JUDGE

7